UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TERRANCE J. FEASTER, | : | Case No. 1:23-cv-98 |
| Plaintiff, | : | |
| vs. | : | District Judge Matthew W. McFarland |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| WALTER SAMMONS, *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION[1]

Plaintiff, an inmate currently incarcerated at Southern Ohio Correctional Institution (SOCF), brought this civil rights action pursuant to 42 U.S.C. § 1983.[2] (Doc. #5). He is proceeding without the assistance of counsel and *in forma pauperis*. (Doc. #s 1, 5, 7). This case is currently before the Court upon Plaintiff's Motion for Leave to File Amended Complaint and attached exhibits. (Doc. #15).

**I.    Background**

On February 21, 2023, Plaintiff commenced this action against Defendants Sergeant Walter Sammons and Corrections Officers R. Jackson, T. Sherman, R. Carver, and Norman. (Doc. #s 1, 5). Plaintiff asserted that he is bringing claims of "Retaliation," "Emotional Distress," and "Unnecessary and Wanton Infliction of Pain," in violation of his rights under the First and Eighth Amendments to the United States Constitution. (Doc. #5, *PageID* #94). Upon initial review, the

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] "Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'" *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 624 (1979) (Powell, J., concurring).

undersigned recommended that the Court permit Plaintiff to proceed on his First Amendment retaliation claim and Eighth Amendment excessive-force and/or failure to intervene claims against Defendants Norman and Sammons based on the events alleged to have occurred on September 14, 2021. (Doc. #8, *PageID* #152). The undersigned recommended that Plaintiff's remaining claims be dismissed for failure to state a claim upon which relief may be granted. *Id.* On January 8, 2024, United States District Judge Matthew W. McFarland adopted the Report and Recommendation. (Doc. #16).

On November 15, 2023, Plaintiff filed the Motion for Leave to File Amended Complaint that is presently before the Court. (Doc. #15). Defendants have not filed a response to Plaintiff's Motion, and the time for doing so has elapsed.

## II. Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that a complaint may be amended once as a matter of course within 21 days of service of responsive pleadings. Fed. R. Civ. P. 15(a)(1). Additional amendments to a complaint require the Court's permission or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). The grant or denial of a motion to amend under Fed. R. Civ. P. 15(a) is within the discretion of the trial court, and leave to amend a complaint should be liberally granted. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227 (1962). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.,* 427 F.3d 996, 1001 (6th Cir. 2005).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman*, 371

U.S. at 182, 83 S.Ct. 227); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, (2009). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. While *pro se* parties must satisfy basic pleading requirements, *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989), their pleadings must be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, "even a *pro se* complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ogle v. Columbia Gas Transmission, LLC,* 513 F. App'x 520, 522 (6th Cir. 2013) (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

Furthermore, the Prison Litigation Reform Act authorizes *sua sponte* review of any complaint in which a prisoner seeks to proceed *in forma pauperis* to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, or fails to

3

state a claim upon which relief may be granted. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). Accordingly, because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must re-screen his proposed amended complaint under the Prison Litigation Reform Act regardless of whether the amendment is considered under Rule 15(a)(1) or Rule 15(a)(2). *Nutt v. Seta*, No. 1:19-CV-460, 2020 WL 581837, at *1 (S.D. Ohio Feb. 6, 2020), *report and recommendation adopted*, No. 1:19-CV-460, 2020 WL 1042476 (S.D. Ohio Mar. 4, 2020).

### III. Discussion

In his Motion for Leave to File an Amended Complaint, Plaintiff asks the Court to "add[] defendants, new legal claims, and sets of facts aligned with those granted by the Court." (Doc. #15, *PageID* #192). Plaintiff seeks to add several new defendants, including Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction (ODRC); Ronald Erdos, Acting Warden of SOCF; Case Manager R. Rush; and Corrections Officers G. Hadinger, Brian Barney, and J. Kinner. *Id.* at 193-94. Plaintiff also includes allegations against Corrections Officers R. Carver; R. Jackson; and T. Sherman, who were previously dismissed upon initial review. *Id.* at 193. Plaintiff asserts that he is bringing claims of, among other things, retaliation, failure to act, failure to protect, inflicting emotional distress, pain, and suffering, in violation of his rights under First, Fourth, Fifth, and Eighth Amendments.

Although Plaintiff appears to include his proposed amended complaint, (Doc. #15, *PageID* #s 193-200), he did not include the claims against Defendants Norman and Sammons from his original Complaint. Instead, he indicates that he "accepts claims against defendants Norman and Sammons adopted in R&R entered on 10/3/2023 violating Plaintiff's 4th and 5th Amend[ment] Rights." *Id.* at 199.

4

*Official Capacity Claims*

Plaintiff asserts that each Defendant is "sued individually and in his or her official capacity …." (Doc. #15, *PageID* #194). To the extent that Plaintiff seeks monetary damages from Defendants, Plaintiff's claims against Defendants in their official capacities are futile. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, Defendants are immune from suit in their official capacities to the extent Plaintiff seeks monetary relief in this action.

*Defendant Hadinger*

Plaintiff alleges that after witnessing multiple officers beating and assaulting another inmate between February 18, 2021, and February 20, 2021, he wrote grievances that he planned to file about the incidents. (Doc. #15, *PageID* #s 195-96). According to Plaintiff, Corrections Officer G. Hadinger, who knew that Plaintiff's friends and family had called about incidents, entered Plaintiff's cell to conduct a shakedown, "noticed the [] complaints, took them, discarded them and 'retaliated' by writing the plaintiff a falsified conduct report for a substance that was never in the plaintiff's cell or possession …." *Id.* at 196. At this stage of the proceedings, without the benefit of briefing by the parties, the undersigned concludes that Plaintiff's First Amendment retaliation claim against Defendant Hadinger may proceed for further development at this juncture.[3]

*Defendants Chambers-Smith and Erdos*

Plaintiff alleges that officers and staff harassed and "intentionally inflicted emotional distress" upon him over the course of two years. (Doc. #15, *PageID* #196). Plaintiff claims that Defendant Chambers-Smith, Director of ODRC, had prior notice "of the conditions the plaintiff endured" over the course of two years, and she failed to act and failed to protect him. *Id.* According to Plaintiff, her failure to act and protect him "caused [him] to subsequently to be subjected to 'Intentional Harassment,' 'Retaliation,' Intentional Infliction of emotional distress,' and assaults by staff …." Plaintiff similarly alleges that Defendant Erdos, Acting Warden of SOCF, knew of the conditions, harassment, and retaliation that Plaintiff endured. *Id.* at 197.

To hold a supervisory official personally liable under § 1983, a plaintiff must demonstrate that the official actively engaged in some unconstitutional behavior. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead

---

[3] The undersigned expresses no opinion on the merits of this claim.

that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). This means "the supervisor must have abdicated his specific job responsibility, with the '*active performance* of the supervisor's individual job function ... directly resulting in the constitutional injury.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 898-99 (6th Cir. 2018) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)). Personal involvement requires "at a minimum" that a state actor "at least implicitly authorized, approved, or knowingly acquiesced" to the underlying constitutional violation. *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020) (quotation omitted); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). Similarly, a supervisor's failure to act, without more, is insufficient to establish supervisory liability. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("[A] mere failure to act will not suffice to establish supervisory liability.") (citations omitted).

Plaintiff's broad assertion that Defendants Chambers-Smith and Erdos failed to act and failed to protect him from harassment, retaliation, intentional infliction of emotional distress, and assaults by staff is insufficient to state an Eighth Amendment claim against them. Plaintiff has not alleged that Defendants Chambers-Smith and Erdos encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it. Further, Plaintiff has not alleged that Defendants Chambers-Smith and Erdos "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of any Defendant. *Bellamy*, 729 F.2d at 421. Accordingly, Plaintiff's new claims against Defendants Chambers-Smith and Erdos are futile.

7

*Defendant Barney*

Plaintiff alleges that Defendant Brian Barney intentionally inflicted emotional distress, intentionally harassed, and retaliated against him in violation of the Eighth Amendment. (Doc. #15, *PageID* #197). Specifically, Plaintiff alleges that on March 2, 2021, Defendant Barney left Plaintiff outside the Rules Infraction Board (RIB) office in shackles and cuffs for thirty minutes when no other prisoners were around or awaiting a hearing. *Id*. Plaintiff attached the complaint he filed with SOCF regarding Defendant Barney's conduct. (Doc. #15-2, *PageID* #214). In the complaint, Plaintiff asserted that Defendant Barney left him cuffed and shackled for no reason and berated Plaintiff as he walked past him. *Id.* Plaintiff indicates that he was in pain, and "was told by the escort c/o that: per Warden Erdos the cuffs are to be squeezing, cutting circulation off because of a recent staff assault." *Id.* Plaintiff also claims that Defendant Barney caused him further emotional distress, pain, and suffering by "further confirming or affirming a guilty decision on a falsified conduct report." (Doc. #15, *PageID* #197).

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078 (1986)). The Sixth Circuit has explained,

> A viable Eighth Amendment claim has an objective and subjective component. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective component requires that the pain be serious, *see Hudson v. McMillian,* 503 U.S. 1, 8-9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and the subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *Wilson v. Seiter,* 501 U.S. 294, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

*Dean v. Campbell*, No. 97-5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998).

Plaintiff fails to establish the objective component of an Eighth Amendment claim. Plaintiff alleges that he suffered pain, but he does not provide any further information regarding the cause or extent of that pain. (Doc. #15, *PageID* #197). Plaintiff's attached complaint suggests that Plaintiff thought his handcuffs were too tight, but Plaintiff does not allege that he suffered any injury as a result. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (quoting *Whitley*, 475 U.S. at 327); *Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight handcuffs and striking a food slot are *de minimis* injuries under the Eighth Amendment); *Bullocks v. Hale*, 478 F. Supp. 3d 639 (S.D. Ohio 2020), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021) (finding swelling and bruising to be relatively minor injuries that do not satisfy the objective prong for excessive force); *Matthews v. Copeland*, 286 F. Supp. 3d 912, 916 (M.D. Tenn. 2017) (granting summary judgment to defendants in part because the plaintiff's injuries from ankle shackles, including swelling and lacerations, were too *de minimis* to support Eighth Amendment claim). Plaintiff likewise fails to provide any additional information regarding the cause or extent of his emotional distress. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Barney is futile.

Moreover, Plaintiff fails to state a retaliation claim against Defendant Barney.

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

9

Plaintiff asserts that Defendant Barney retaliated against him, but the proposed amended complaint contains no allegations that plausibly suggest that Defendant's purported actions were in response to protected conduct under the First Amendment. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under §1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Accordingly, Plaintiff's retaliation claim against Defendant Barney is futile.

*Defendant Kinner*

Plaintiff's allegations regarding Defendant Kinner are incredibly limited. He re-alleges paragraphs 14 (allegations regarding Defendants Hadinger and Chambers-Smith) and 16 (allegations regarding Defendant Barney) and asserts that Defendant Kinner "acted in the same sense." (Doc. #15, *PageID* #197).

Plaintiff's allegations are insufficient to plausibly suggest that Defendant Kinner violated Plaintiff's constitutional rights. Plaintiff fails to allege any facts concerning how Defendant Kinner was involved in the claims against Defendants Hadinger, Chambers-Smith, and Barney. Indeed, the proposed amended complaint (Doc. #15) fails to set forth any facts from which the Court plausibly can infer that Defendant Kinner was personally involved in any violation of Plaintiff's rights. *See, e.g.*, *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983).

*Defendant Rush*

Plaintiff asserts that Defendant Rush "contributed to the harm caused to the plaintiff as the defendants conduct became outrageous and overwhelming …." (Doc. #15, *PageID* #198).

10

Further, Plaintiff alleges that after he "was moved from [Restrictive Housing] (RH) to an overflow block away from retaliation and harassment," Defendant Rush wrote a falsified conduct report that resulted in Plaintiff being moved back to RH. *Id.*; (Doc. #15-4, *PageID* #218). According to Plaintiff, he was housed in RH "longer than the [allotted] timeframe of 29 day limit," causing him "extreme emotional distress." (Doc. #15, *PageID* #s 198-99). Plaintiff asserts that these actions violated his rights under the Fourth, Fifth, and Eighth Amendments.

As an initial matter, although Plaintiff alleges that he was moved back to restrictive housing as a result of Defendant Rush's March 17, 2021 false conduct report, the attachments to his proposed amended complaint show that Plaintiff was placed in restrictive housing on February 20, 2021. (Doc. #15-4, *PageID* #224). On March 17, 2021, a committee recommended that Plaintiff be placed in extended restrictive housing based on Plaintiff's earlier RIB convictions. *Id.* at 222. Shortly thereafter, on March 24, 2021, the Warden approved Plaintiff's placement in extended restrictive housing for six months. *Id.* at 224.

Although Plaintiff asserts that Defendant Rush's conduct violated his rights under the Fourth and Fifth Amendments, Plaintiff's proposed amended complaint does not include any allegations that implicate rights under the Fourth or Fifth Amendments.

To the extent that Plaintiff asserts a retaliation claim against Defendant Rush, his claim is futile. Plaintiff does not allege that he was engaged in protected conduct or that Defendant Rush wrote the false conduct report because of Plaintiff's protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

Further, to the extent that Plaintiff asserts that his placement in restrictive housing for more than 29 days violates his Eighth Amendment right to be free from cruel and unusual punishment, Plaintiff's claim is futile. *See Jarrett v. Greene*, No. 1:22-CV-456, 2022 WL 13795466, at *10

11

(S.D. Ohio Oct. 24, 2022), *report and recommendation adopted,* No. 1:22-CV-456, 2022 WL 17253595 (S.D. Ohio Nov. 28, 2022) (citing *Estelle*, 429 U.S. at 102 (noting that "the primary concern of the drafters [of the "Cruel and Unusual Punishments clause] was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment."); *Ishaaq v. Compton*, 900 F. Supp. 935, 943-44 (W.D. Tenn. 1995) (citations omitted) ("To the extent that plaintiff is attempting to assert an Eighth Amendment claim based on his disciplinary conviction, he has no claim. Neither classification or housing assignments, nor confinement to segregation, either administrative or punitive, implicates the cruel and unusual punishments clause of the Eighth Amendment."); *Howell v. Hamilton Cnty. Justice Ctr.*, No. 1:15-cv-303, 2015 WL 2406082, at *5 (S.D. Ohio May 20, 2015), *report and recommendation adopted*, 2015 WL 3852912 (S.D. Ohio June 22, 2015) ("Any claim by plaintiff that his 12-day confinement in 'lock-in' in and of itself constitutes cruel and unusual punishment under the Eighth Amendment is meritless."); *Harden-Bey v. Rutter,* 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003)) ("Because placement in segregation is a routine discomfort that is part of the penalty that criminal offenders pay for the offenses against society, it is insufficient to support an Eighth Amendment Claim.")).

Finally, although Plaintiff does not specifically contend that Defendant Rush violated his due process rights, to the extent that his proposed amended complaint asserts a due process claim under the Fourth Amendment against Defendant Rush for allegedly writing a false conduct report, his claim is futile. (Doc. #15, *PageID* #198). The Sixth Circuit has said that "[a] prisoner has no constitutional right to be free from false accusations of misconduct." *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (quoting *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003)); *see also Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *3

(S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021) ("Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right.").

"A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). *But see Garth v. Hall*, No. 2:21-cv-47, 2021 WL 1422681, at *8-10 (W.D. Mich. Apr. 15, 2021) (dismissing a procedural due process claim alleging that officers planted drugs in plaintiff's area, because no liberty interest was implicated). "To the extent that false accusations of misconduct implicate due process concerns, the false charges 'do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing.'" *Brown*, 2019 WL 5436159, at *4 (quoting *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004)). The "minimum due process requirements for such a disciplinary hearing are: (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken." *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *5, n. 7 (N.D. Ohio July 19, 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Here, Plaintiff does not indicate whether he was provided a hearing before the Rules Infraction Board. Although he attached Defendant Rush's March 17, 2021 conduct report, he does not include any other documents related to that conduct report. Plaintiff does not allege that he was denied a fair hearing on the conduct. Under these circumstances, Plaintiff cannot show there was a denial of procedural due process such that would allow this claim to proceed.

13

*Defendants Carver, Jackson, and Sherman*

Finally, Plaintiff alleges that Defendants R. Carver, R. Jackson, and T. Sherman denied him showers and meals, as explained in his original Complaint. (Doc. #15, *PageID* #198). Plaintiff indicates that he "avers to these facts as a collective act which were intentional and meant to cause harm as stated … all while during a global pandemic while the plaintiff was in Restrictive Housing under falsified conduct stemming from protected conduct …." *Id.* at 198-99.

For the reasons set forth in the October 3, 2023 Report and Recommendation, Plaintiff's Eighth Amendment claims against Defendants Carver, Jackson, and Sherman regarding the denial of showers and meals fail to state a claim upon which relief can be granted. (Doc. #8, *PageID* #148); *see also Hickey v. Stump*, No. 1:22-CV-865, 2022 WL 12338486, at *12 (W.D. Mich. Oct. 21, 2022) (loss of privileges during the plaintiff's eleven-month placement in segregation did not violate the Eighth Amendment); *Perez v. Braman*, No. 1:22-CV-571, 2022 WL 2680237, at *6 (W.D. Mich. July 12, 2022) ("[T]he deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.") (citing cases); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (finding that denial of toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days was insufficient to state an Eighth Amendment violation).

In sum, based upon the foregoing, the undersigned recommends that Plaintiff's Motion for Leave to File Amended Complaint (Doc. #15) be **GRANTED** in part as to Defendant Hadinger, and **DENIED** in part as to all other Defendants. More specifically, the Motion to Amend should be granted insofar as the proposed amended complaint alleges a First Amendment retaliation claim against Defendant Hadinger in his individual capacity. However, the Motion to Amend should be

denied to the extent that Plaintiff seeks to assert claims against Defendants Chambers-Smith, Erdos, Rush, Barney, Kinner, Carver, Jackson, and Sherman.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Motion for Leave to File Amended Complaint (Doc. #15) be **GRANTED IN PART** as to Plaintiff's First Amendment retaliation claim against Defendant Hadinger and **DENIED IN PART** as to Plaintiff's remaining claims;

2. If this Report and Recommendation is adopted, the Clerk of Court be directed to file Plaintiff's Complaint (Doc. #5) and Plaintiff's proposed amended complaint (Doc. #15, *PageID* #193-249) in one document (Plaintiff's Amended Complaint) on the docket; and

3. Plaintiff be ordered to submit to the Court a completed summons form and U.S. Marshal form for Defendant Hadinger within thirty (30) days of any Decision and Entry adopting this Report and Recommendation. For his convenience, the Clerk of Court is **DIRECTED** to send Plaintiff a summons form and U.S. Marshal form along with this Report and Recommendation.

July 24, 2024                                         *s/Peter B. Silvain, Jr.*
                                                                             Peter B. Silvain, Jr.
                                                                             United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendation within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).