**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TERRANCE J. FEASTER, | : | Case No. 1:23-cv-98 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Matthew McFarland |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| WALTER SAMMONS, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

This matter is currently before the Court upon Defendant's Motion for Summary Judgment (Doc. #36), Defendant's Amended Motion for Summary Judgment (Doc. #43-1), and Plaintiff's Response in Opposition (Doc. #50). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant's Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force and failure to intervene claims and **GRANT** Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claims.

### I.    Background

In February 2023, Terrance J. Feaster ("Plaintiff") filed a civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio. (Doc. #s 5, 23). Plaintiff is proceeding *pro se* and *in forma pauperis*.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff filed his complaint against Defendants Sergeant Walter Sammons and Corrections Officers R. Jackson, T. Sherman, R. Carver, and Norman, asserting claims of "Retaliation," "Emotional Distress," and "Unnecessary and Wanton Infliction of Pain," in violation of his rights under the First and Eighth Amendments to the United States Constitution. (Doc. #s 1, 5). Upon initial review, the undersigned recommended the majority of Plaintiff's claims be dismissed for failure to state a claim upon which relief may be granted, leaving only Plaintiff's First Amendment retaliation claim and Eighth Amendment excessive-force and/or failure to intervene claims against Defendants Norman and Sammons. (Doc. #8, *PageID* #152). United State District Judge Matthew W. McFarland adopted the Report and Recommendation on January 8, 2024. (Doc. #16).

Plaintiff's surviving claims allege that, on or about the afternoon of September 14, 2021, Plaintiff spoke with Defendant Norman about his cell being excessively searched. (Doc. #5, 23). Defendant Norman allegedly became visibly angry and took Plaintiff to Defendant Sammons's office, leading him through an area of the prison that was under renovation, in violation of prison policy. *Id.* Once in Defendant Sammons's office, Defendants allegedly yelled at Plaintiff for filing grievances; after some "back and forth," Plaintiff avers that Defendant Sammons jumped out of his chair and told Plaintiff to turn around and "cuff-up" because he was going to segregation. *Id.* Immediately afterward, Plaintiff alleges that Defendant Sammons yanked and pushed him, forcing Plaintiff against the office door and causing it to slam shut. *Id.* Plaintiff alleges that a non-party case manager attempted to open the door but could not. *Id.* As a result, Plaintiff alleges he suffered injury to his shoulder. *Id.* Plaintiff requests punitive and compensatory damages in the amount of $1 million due to physical and emotional injuries. *Id.*

Plaintiff filed an amended complaint on August 14, 2024. (Doc. #23). In addition to the allegations in the initial complaint, Plaintiff's amended complaint alleges that Defendant

2

Corrections Officer G. Hardinger conducted a shakedown of Plaintiff's cell, knowing that Plaintiff's friends and family had called about incidents within the correctional facility involving Plaintiff. *Id.* During the shakedown, Plaintiff alleges that Defendant Hardinger "noticed the [] complaints, took them, discarded them and 'retaliated' by writing the plaintiff a falsified conduct report for a substance that was never in the plaintiff's cell or possession . . .." *Id.* The Court allowed Plaintiff's retaliation claim against Defendant Harbinger to proceed for further development. (Doc. #'s 20, 22). Defendant Harbinger has yet to be served, and as such, Defendants' Motions for Summary Judgment do not encompass claims against him.

## II.      Standard of Review

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when it has the capacity to affect an action's outcome. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact generally does not exist where the record could not "lead a rational trier of fact to find for the non-moving party . . ..'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986). This is true even when opposing parties allege two different sets of facts but one is "blatantly contradicted by the record, so that no *reasonable* jury could believe it . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). A court may use "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in deciding whether a genuine issue of material fact exists. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002) (quoting Fed. R. Civ. P. 56) (internal quotations omitted). The court must evaluate

evidence and view any facts that are not blatantly contradicted by the record in the light most favorable to the non-moving party. *Id.*; *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). Where there are contradictory facts, the non-moving party must "present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

The movant bears the initial burden of establishing that there are no genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 324. The movant must inform the court of the basis of its motion by identifying the portions of the record it believes "demonstrate the absence of a genuine issue of material fact" with specificity. *Id.* at 322. The court must review the facts in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587; *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018); *Satterfield*, 295 F.3d at 615; *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). Once the movant has successfully supported its motion, the burden shifts and the non-moving party must demonstrate that genuine issues of a material fact remain. *Anderson*, 477 U.S. at 257; *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-moving party cannot solely rely on their allegations but rather "must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Filings submitted by *pro se* plaintiffs are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)). However, a plaintiff's status as a *pro se* litigant does

4

not alter their burden to support their factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851–52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### III.     Discussion

Defendants ask this Court to grant summary judgment in their favor, pursuant to Fed. Civ. R. 56. (Doc. #43-1, *PageID* #537). Defendants Sammons and Norman assert that their actions do not satisfy the standard for an Eighth Amendment claim for use of excessive force or failure to intervene because no force was employed. *Id.* at 532. Defendants contend that, on the day in question, Plaintiff approached Defendant Norman about his cell being searched. *Id.* at 526. The search of Plaintiff's cell, according to Defendants, was part of the correctional facility's randomized searches that "are designed to uncover contraband items, and therefore deter the possession of contraband by inmates." *Id.* at 527. During the search, Defendants assert that Defendant Norman discovered minor contraband, which caused Plaintiff to become agitated and use "disrespectful and profane language at an elevated tone." *Id.* Defendant Norman took Plaintiff to Defendant Sammons's office to discuss the suspected contraband and give Plaintiff the option to dispose of it or accept a formally issued conduct report. *Id.* "This was the singular purpose for [Plaintiff] being brought to [Defendant] Sammons' office," according to Defendants. *Id.* During the discussion, Defendants contend that Plaintiff became visibly agitated, and Defendant Sammons "ordered Plaintiff to cease his disrespectful behavior and return to his cell." *Id.* at 529. Defendants aver that physical force was not employed. *Id.* at 528. Non-party Case Manager Charles R. O'Connor witnessed the exchange and reported that "no force [was] used or witnessed." (Doc. #36-2, *PageID* #473). Plaintiff was examined by a nurse less than twenty-four hours after the alleged altercation, and the nurse's report indicated that the Plaintiff had "no difficulty raising [his] arms above his [head] and removing shirts," that he "ha[d] full range of motion with no difficulty

5

in reported affected right shoulder," and no "deformity, redness, swelling, bruising, [or] tenderness." (Doc. #43-1, *PageID* #528) (quoting Doc. #36-3, *PageID* #477–78). Defendants contend that a non-party investigator assessed Plaintiff's claims and determined they were unfounded. *Id.*

With permission from the Court, Plaintiff filed a response in opposition to Defendant's Motions for Summary Judgment on September 8, 2025. (Doc. #50). This Court ordered Defendants to file a reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment on or before January 16, 2026. (Doc. #52). Defendants did not file a reply in support of their motions for summary judgement.

## A. Excessive Force Under the Eighth Amendment

A convicted prisoner has a Constitutional right to be free from the use of excessive force under the Eighth Amendment. U.S. Const. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 327 (1986). To determine whether a violation occurred, the court must determine whether the force was used in good faith to maintain discipline or whether it was employed to maliciously or sadistically cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). There are two prongs to this analysis: (1) the subjective element of the prison officer's state of mind and (2) the objective element of the pain the prisoner experienced, which is evaluated under the standard of "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

The subjective element requires that the intent of the prison officer rise above "deliberate indifference" and instead be "maliciously and sadistically to inflict pain." *Johnson v. Sootsman*, 79 F.4th 608, 616 (6th Cir. 2023) (quoting *Hudson*, 503 U.S. at 5–7). As maintaining general order and prison security may require physical force that would amount to assault under common law,

6

*Cordell*, 759 F.3d at 580, prison officer's use of force does not violate a prisoner's Eighth Amendment right so long as he believed it was necessary, even if that belief is unreasonable. *Johnson*, 79 F.4th at 616. Prison officials do, however, violate the Eighth Amendment when their action "reflects an unnecessary and wanton infliction of pain." *Cordell*, 759 F.3d at 580 (quoting *Williams*, 631 F.3d at 383). Courts have generally considered several factors to determine the prison officer's intent, including the extent of the prisoner's injury, the nature of the threat that justified the use of force, the amount of force and its proportionality to the threat, and whether the officer took any actions to reduce the required amount of force. *Id.* at 618 (citations omitted).

The objective element requires the harm to a prisoner "rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations." *Johnson*, 79 F.4th at 615. Courts measure whether conduct is "cruel and unusual" using "contemporary standards of decency." *Id.* at 616. The Eighth Amendment is not typically violated by "'de minimis uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Id.* at 616 (quoting *Hudson*, 503 U.S. at 9–10). The court must look to the nature of the force instead of the extent of the injury, though the extent of a prisoner's injury may help determine the amount of force used. *Wilkins*, 559 U.S. 34, 34–37 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). However, the absence of serious injury is a relevant factor. *Id.* at 37 (finding that the absence of serious injury may suggest the force used was proportional or reasonably necessary given the individual circumstances).

Both parties agree that Plaintiff's cell was searched on September 14, 2021. (Doc. #s 5, 43-1). They also agree that Plaintiff approached Defendant Norman to speak about the most recent searches of his cell. *Id.* Further, both parties agree that Defendant Norman led Plaintiff to

Defendant Sammons's office on September 14, 2021. *Id.* Both parties agree that Plaintiff and Defendants engaged in a "back and forth" while in Defendant Sammons's office. *Id.* However, the parties contest what transpired in Defendant Sammons's office, what force, if any, was used, and who was present at the time of the alleged use of force. On its face, it seems the parties' contradictory stories cannot be resolved on summary judgment. *Id.* However, when opposing parties allege two different sets of facts, the court must determine whether one story is "blatantly contradicted by the record, so that no reasonable jury could believe it . . . ." *Scott*, 550 U.S. 372, 380.

To support the assertions in their Motions for Summary Judgment, Defendants provided declarations from Defendant Norman, non-party Case Manager O'Connor, and a non-party investigator; Investigatory Question and Answer documents from Defendant Norman, Defendant Sammons, and non-party Case Manager O'Connor; incident reports filed September 15, 2021, from Defendant Norman, Defendant Sammons, and non-party Case Manager O'Connor; an Inmate Confidential Statement written by Plaintiff, dated September 15, 2021; Plaintiff's medical examination report from the SOCF infirmary, dated September 15, 2021; the Report of Inspector to the Warden dated September 16, 2021; and a declaration from the healthcare administrator, who acts as the custodian of Plaintiff's health records at SOCF. (Doc. #s 36–36-3; 43-1–43-2). To support the assertions in his complaint and in opposition of Defendants' motions for summary judgment, Plaintiff provided various Ohio Department of Rehabilitation & Correction (ODRC) policies; grievances and findings regarding the September 14, 2021 incident, as well as various grievances that are unrelated to use of force and/or pre-date the alleged use of force on September 14, 2021; appeals to the chief inspector; various court documents, including Plaintiff's requests for production of evidence and Defendants' responses to such requests; the Report of Inspector to

the Warden dated September 16, 2021; and an Inmate Property Record that Plaintiff alleges contains his forged signature. (Doc. #s 50–50-30).

Looking first at the subjective element, Defendants have provided evidence that no use of force occurred in Defendant Sammons' office on September 14, 2021. Plaintiff asserts that non-party Case Manager O'Connor witnessed the use of force through the door as Plaintiff was forced against it, which also kept Case Manager O'Connor from accessing the room. (Doc. #s 5, 23, 50-10, *PageID* #638). Defendants, however, contend non-party Case Manager O'Connor was present in the room during their conversation with Plaintiff. (Doc. #43-1, *PageID* #528). Case Manager O'Connor asserts that he was present in Defendant Sammons' office during Defendants' conversation with Plaintiff and that no use of force occurred (Doc. #43-2). Additionally, Defendant Norman, who Plaintiff agrees was present during the alleged use of force, also indicated she did not witness any use of force. (Doc. #36-1). During an investigation, Defendant Sammons attested that, while he was in his office on the afternoon of September 15, 2021, he did not throw Plaintiff against the door nor has he "use[d] force on [Plaintiff] at anytime." (Doc. #36-2). Viewing the record in the light most favorable to Plaintiff, no reasonable jury would be able to find that Defendants employed force; without a finding that Defendants used force against Plaintiff, no reasonable jury could find that Defendants' use of force was extreme and outrageous or employed in a manner meant to maliciously or sadistically cause pain.

Even if Defendants had employed force, Plaintiff asserts that this force occurred after he "became combative" while in Defendant Sammons's office. (Doc. #50, *PageID* #577). An Eighth Amendment violation does not occur where prison officials believe, even unreasonably, that use of force is required to keep the peace or maintain prison security. *Cordell*, 759 F.3d at 580; *Johnson*, 79 F.4th at 616. Plaintiff has failed to establish in his response that any alleged use of

force on September 14, 2021, especially following the allegation that he became combative, was done so maliciously or with a sadistic intent to cause pain. (Doc. #50).

Assuming, *arguendo*, that Plaintiff could establish (1) force was employed, (2) that force was extreme or outrageous, and (3) Defendants' employed such force with malice or a sadistic intent to cause pain, the court must still assess the objective prong of Plaintiff's Eighth Amendment excessive force claim. In the instant case, Plaintiff's injuries are not sufficiently serious to offend contemporary standards of decency. Plaintiff asserts that he sustained injuries to his shoulder as a result of the alleged use of force. (Doc. #5, 23). However, a report detailing a medical examination of Plaintiff on September 15, 2021, indicates Plaintiff showed no sign of injury or bruising, no indication of pain when lifting his arm above his head, and that he was initially confused as to why he was present for the medical assessment in the first place. (Doc. #36-3, *PageID* #476). In fact, the medical report is devoid of any evidence of injury, bruising, lacerations, or any other indication of harm anywhere on Plaintiff's body. *Id.* Even in the light most favorable to Plaintiff, there is no evidence of physical force, let alone evidence of force that rises beyond *de minimis* or that would "repulse 'the conscience of mankind.'" *Johnson*, 79 F.4th 608, 616 (quoting *Hudson*, 503 U.S. at 9–10).

Accordingly, Defendants have met their initial burden of establishing there are no genuine issues of material fact regarding the Eighth Amendment use of excessive force claim. *Celotex Corp.*, 477 U.S. at 324. Once Defendants successfully supported their Motions, it became Plaintiff's burden to demonstrate the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 257. However, Plaintiff has failed to do more than assert already dismissed claims or rely on the original allegations that survived initial review. *First Nat'l Bank of Ariz.*, 391 U.S. at 288. This is not sufficient to meet Plaintiff's burden of establishing a genuine issue of material fact. *Id.*

Additionally, at present, the record so flagrantly contradicts Plaintiff's assertions that, even in the light most favorable to Plaintiff, it is unlikely that a rational trier of fact could find for him. *Matsushita*, 475 U.S. 574, 587.

Therefore, as Defendants' actions do not satisfy the standard for an Eighth Amendment claim as a matter of law, Defendants' Motions for Summary Judgment should be granted as it pertains to Plaintiff's Eighth Amendment claims for use of excessive force against Defendant Sammons and Plaintiff's Eighth Amendment claims for failure to intervene against Defendant Norman.

### B. Retaliation under the First Amendment

To succeed on a retaliation claim under the First Amendment, a plaintiff must establish that (1) he engaged in protected conduct, (2) he was the subject of an adverse action that would "deter a person of ordinary firmness from continuing to engage in that conduct," and (3) there is a causal connection between the protected conduct and the adverse action—or more plainly, that the adverse action was motivated, even if only in part, by the plaintiff's engagement in the protected conduct. *Brown v. Gray*, 2022 WL 961246, ¶ 8 (6th Cir. Mar. 28, 2022), citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (internal citations omitted). Regarding the first element, as relevant in this case, "incarcerated people have a First Amendment right to file non-frivolous grievances and lawsuits against prison officials." *Brown v. Mahlman*, 2024 WL 248580, ¶ 10 (S.D. Ohio 2024) (Litkovitz, M.J.) (adopted by *Brown v. Mahlman*, 2024 2024 WL 1340261 (S.D. Ohio 2024)), (citing *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018)). To meet the second element, a plaintiff must establish that defendants undertook an adverse action taken that would "deter a person of ordinary firmness from continuing to engage in the protected conduct." *Id.*; *Bell*, 308 F.3d at 606 ("The relevant question is whether the defendants' actions are 'capable of deterring a

11

person of ordinary firmness;' there is no requirement that the plaintiff show actual deterrence.")
(quoting *Thaddeus-X*, 175 F.3d at 398). To survive summary judgment, a plaintiff must establish

that such adverse action is more than "inconsequential." *Maben*, 887 F.3d at 266 (quoting *Bell v.

Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)); *Reynolds-Bey v. Harris-Spicer*, 428 Fed. App'x 493,

503 (6th Cir. 2011) (listing a number of "[e]xamples of adverse actions that [the 6th Circuit] has

held sufficient to meet the 'person of ordinary firmness' standard."). "Retaliatory cell searches and

seizure or destruction of an inmate's legal papers or property satisfy the adverse action

requirement." *Brown*, 2024 WL 248580, at ¶ 13 (citing *Maben*, 887 F.3d at 267; *Bell*, 308 F.3d at

604). However, a "single search of a prison cubicle would not deter a person of 'ordinary firmness'

from pursuing constitutional grievances." *Williams v. [Unknown] Stevenson, P.C.*, 2020 U.S. App.

LEXIS 31183, ¶ 4 (6th Cir. 2020), quoting *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003).

Finally, turning to the third element, a plaintiff must establish a causal connection between the

retaliatory conduct and plaintiff's protected activities. *Maben*, 887 F.3d at 264. Causation may, in

part be inferred from close temporal proximity. *Brown*, 2024 WL 248580, at ¶ 14 (quoting *Maben*,

887 F.3d at 268) ("[T]he timing alone may be 'significant enough to constitute indirect evidence

of a causal connection so as to create an inference of retaliatory motive.'"). The plaintiff bears the

burden of establishing the causal connection. *Maben*, 887 F.3d at 267. Once satisfied, the burden

shifts to defendants to establish that "he would have taken the same action in the absence of the

protected activity . . .." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 399).

Plaintiff has adequately alleged the first element of his retaliation claim because filing a

grievance is protected conduct. *See Brown,* 2024 WL 248580, at ¶ 10. However, Plaintiff has

failed to satisfy the second and third elements.

As to the second element, while Plaintiff has alleged several cell searches in quick succession, he has not established that cell searches of this nature (1) would deter a person of ordinary firmness from pursuing constitutional grievances nor that (2) the searches were not part of SOCF's standard cell search procedures. An "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Brown*, 2024 WL 248580, at ¶ 10 (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)) (internal citations omitted).

Regarding the third element, Plaintiff asserts that the cell searches leading up to September 14, 2021, were a direct result of grievances he had filed against SOCF officials. However, Plaintiff does not aver that Defendants told him the searches were a result of his grievances; Plaintiff does not allege that Defendants promised to cease the searches if Plaintiff stopped filing grievances; Plaintiff does not adequately establish that these cell searches occurred in close temporal proximity to his grievances. In fact, Plaintiff's exhibits indicate that many of his grievances were filed five to six months prior to September 14, 2021, and many of his appeals to the Chief Inspector were filed three to four months prior to September 14, 2021. (Doc. #s 5, 23, 50). Even if Plaintiff sufficiently met his burden to establish a causal connection between Plaintiff's protected activity and Defendants' alleged retaliatory conduct, Defendants assert that, during "every shift at SOCF, one Corrections Officer is required to randomly search three (3) cells on each housing block." (Doc. #36, *PageID* #432) (quoting Doc. #36-1, *PageID* #444). These random searches have a facially neutral, untargeted purpose—to discover and deter possession of contraband. *Id.* With this, Defendants have established that "that [they] would have taken the same action in the absence of the protected activity." *Maben*, 887 F.3d at 267.

Accordingly, while Plaintiff successfully established the first element of retaliation, even in the light most favorable to Plaintiff, no rational trier of fact could find for Plaintiff regarding the second and third elements of his claim. Even if Plaintiff were to successfully establish that he suffered adverse actions at the hands of Defendants and that such action is a direct result of Plaintiff's protected activity, Defendants have met their burden of establishing that any adverse action would have occurred in the absence of Plaintiff's protected activity. Plaintiff is not shielded from any adverse administrative action at the hands of prison officials simply because he filed grievances or lawsuits before the adverse actions were taken. Therefore, Defendants' Motion for Summary Judgment should be granted as it pertains to Plaintiff's First Amendment retaliation claims.

## IV.    Conclusion

The undersigned Magistrate Judge, having considered Defendant's Motions for Summary Judgment, **RECOMMENDS** that:

1.    Defendant Walter Sammons's Motion for Summary Judgment (Doc. #s 36, 43-1) be **GRANTED** as to Plaintiff's Eighth Amendment excessive force and failure to intervene claims; and

2.    Defendant Walter Sammons's Motion for Summary Judgment (Doc. #s 36, 43-1) be **GRANTED** as to Plaintiff's First Amendment retaliation claims.


January 30, 2026                                           s/Peter B. Silvain, Jr.
                                                           Peter B. Silvain, Jr.
                                                           United States Magistrate Judge

14

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).